IN THE CIRCUIT COURT OF THE 18TH JUDICIAL CIRCUIT
DU PAGE COUNTY, ILLINOIS

| | |
|---|---|
| STEVEN DAWKINS and MICHAEL FRANKLIN, Illinois residents, individually and as the representatives of a class of similarly-situated persons, | ) No. 2025 LA 1084 |
| Plaintiffs, | ) MOTION |
| -vs- | ) |
| THE LIFETIME VALUE CO. LLC, a Delaware limited liability company, | ) |
| Defendant. | ) |

REPORT OF PROCEEDINGS of the hearing before the Honorable JUDGE ROBERT W. ROHM, commencing on February 11, 2026.

APPEARANCES:

ATTORNEY WALLACE SOLBERG,
ATTORNEY PATRICK SOLBERG,

on behalf of the Plaintiffs;

ATTORNEY BRENDAN HEALEY,
ATTORNEY JON TALOTTA

on behalf of the Defendant.

RECORDING TRANSCRIBED BY:
Lidia T. Stefani, CSR
Official Court Reporter

THE COURT: Steven Dawkins versus Lifetime Value, 25 LA 1084. Plaintiff.

ATTORNEY WALLACE SOLBERG: For plaintiff, Wallace Solberg.

ATTORNEY PATRICK SOLBERG: And Patrick Solberg, your Honor.

THE COURT: All right. Defense.

ATTORNEY HEALEY: Good morning, your Honor. Brendan Healey on behalf of defendant.

ATTORNEY TALOTTA: Jon Talotta, admitted pro hac vj on behalf of defendant.

THE COURT: Okay, guys, have a seat. I've read the briefs. I can fairly confidently say I've read probably every Right of Publicity Act in the entire country, not just Illinois. Very interesting topic. Feel free, argument from the defense.

ATTORNEY TALOTTA: Thank you, your Honor. I'll be handling the argument.

I'm going to try to keep the opening portion brief, particularly in light of your Honor being so well prepared.

THE COURT: Can I ask you a question?

ATTORNEY TALOTTA: Yeah. I'm happy to go straight to questions.

THE COURT: And I would like to know, I looked, I have not found a case, any case, other than -- a free case, I haven't found one. Every single case that I found involves disclosure of personal information with no charge. I couldn't -- in your brief you stated that there aren't -- there are cases that don't involve free trials. I couldn't find one. I couldn't find a single one.

I know that you -- and I understand that you tried to -- or you did, you characterized Gaul, G-a-u-l, versus Truth (phonetic) as a pre-preview case but it's not. You have to pay a dollar before you see anything.

ATTORNEY WALLACE SOLBERG: I think you're -- is that directed to plaintiff?

THE COURT: Yes.

ATTORNEY WALLACE SOLBERG: We didn't direct -- we didn't say Gaul was a free case. We said it charged a dollar. Gaul was -- what you did is you end up -- I'll let my brother handle that. He knows it better.

THE COURT: Well, no. I guess what I'm saying is here, what we have here, is no personal information is disclosed until you pay either a

dollar or five dollars. I want to know if there's a case out there, there's not. That's -- that's the problem that I have. I looked everywhere because it's amazing to me that -- that if -- if you disclose information and you don't charge any money until afterwards, that's an ERPA violation. But if you charge a penny or a nickel or a dollar or a nominal fund, 99 cents, it's a pre-easy way to get around ERPA and --

ATTORNEY PATRICK SOLBERG: We -- we would just submit that you can't because ERPA, it's all advertising. It's the advertising part that ERPA focuses on, not the nominal fee.

THE COURT: Well, it's not advertising. If you pay money before you get the information, you're selling --

ATTORNEY PATRICK SOLBERG: You're advertising something else.

THE COURT: -- selling commercially available information. I want to know if there's any cases out there that have been a violation that involves a case where the user who gets on the website has to pay money first and then gets the information because that's what we have here. Before you get any

information from this website, you have to pay money.

ATTORNEY TALOTTA: Your Honor --

ATTORNEY WALLACE SOLBERG: It isn't -- go ahead, counsel.

ATTORNEY TALOTTA: Well, I'll just give you our take on our question and then they can -- they can go -- I'm happy to go back and forth. We don't need to --

THE COURT: Yes, that's fine. I just want to know if there's a case out there.

ATTORNEY TALOTTA: So our reading of the cases, there is not a case that involved a fee where a court found a violation where there wasn't also some sort of free preview.

And -- and one of the main issues that I wanted to talk to you about today -- there's two. But the first one was the fact that -- this goes to why we filed a 2-615 and a 2-619 motion today. I happen to be lucky, I'm a Virginia lawyer and we have demurs and special police, so I'm very familiar with the two-part structure.

But we -- we filed a 216 version of our motion because they -- they make an allegation in the complaint at Paragraph 28, and then they raise it

again in their opposition brief that there's information that's shown about the person before there's a payment and that's not -- that's not correct, and that's what Ms. Albrecht's affidavit was intended to show that when you go through this, not only -- not only do we not -- not only does the service not provide personal information about the subject, it doesn't even spit back anything about that -- that person, even their name. When you walk through the flow, as you can see in those exhibits, your Honor, you -- when you come to the website if you're not a member --

THE COURT: Let me stop you; let me interrupt you. Their complaint does not say that. On Paragraph 20, 21, 22; Paragraph 20, *however, prior to revealing the search results, Peoplesmart requires a prospective customer sign up for a seven-day trial.*

Paragraph 21, *Peoplesmart offers two plans, a professional plan and a business plan. A prospective customer can try either plan on a seven-day trial basis for a dollar.*

22, *After the trial plan is selected, the prospective customer provides payment information, consents to automatic membership renewal, and*

*consents to the terms of service and privacy policy. Once this is completed, the prospective customer can view the search results that fall within the search parameters and access the reports generated.*

ATTORNEY TALOTTA: Right.

THE COURT: Their complaints doesn't say that. Their complaint admits that you have to pay money first before you get any personal information.

ATTORNEY TALOTTA: That -- that is correct. But then Paragraph 28 suggests, if you read the first sentence, it ends with saying that *a message indicates that a report for him is available.* And that's not true.

And so the point -- I was trying to drive on the point that there is nothing that's given back. There's no indication that there are any results at all about the person that's being searched.

To your point, there's nothing that this website does before you pay to even indicate if the search that you're going to run, that you have run, is going to give you back results that you want. You have to pay without even knowing.

THE COURT: Let's say -- let's say -- let's say they're right. Let's say it does say that they have

information about a particular individual but don't disclose anything about them; is that a violation?

ATTORNEY TALOTTA: Well, the website doesn't do that. If you look at Exhibit A --

THE COURT: Hypothetically.

ATTORNEY TALOTTA: -- the -- your Honor, I know it's our job to try to parse out these types of questions for you, but I'm always hesitant to because that's not the facts of the case.

THE COURT: Well, it's alleged in the complaint that it is.

ATTORNEY TALOTTA: I -- well, Exhibit D to Ms. Albrecht's affidavit shows you what -- what it says. It says results are available not a report is available.

THE COURT: Well, hang on. On a 619 motion you have to take well-pled facts as true. And if --

ATTORNEY TALOTTA: The whole point of a 619 motion is, as I understand it, is to be able to introduce facts that are not subject to dispute to show that there is an issue.

THE COURT: No, no, you have to take the well-pled facts as true but set forth an affirmative matter to defeat it.

ATTORNEY TALOTTA: Right. And the affirmative matter is -- is what's in Exhibit D that shows what the actual website says when there's a search.

THE COURT: Affirmative matter isn't -- isn't no, that's not true. It has to be yes, that's true but there's an affirmative matter that would make that a so what.

ATTORNEY TALOTTA: Okay.

THE COURT: So you can't -- you can't say that that allegation is untrue, therefore, a 619 motion to dismiss should be granted.

ATTORNEY TALOTTA: Okay.

THE COURT: You can't -- you can't do that.

ATTORNEY TALOTTA: To answer your --

THE COURT: That's an allegation. And to be honest with you, I want to know if that's enough. If it -- if as alleged they say I'm not going to give you any personal information until you pay some money, but we do have some information, is that a violation?

ATTORNEY TALOTTA: I -- I would say that it's not because the whole purpose of the statute is actually using the identity of the person as the advertisement, and that's not what's being done.

The person's name -- Dawkins' name, Dawkins' identity is never -- is never given back by us; it's never shown.

THE COURT: Do you have any cases to suggest that not disclosing any personal information but just saying, yeah, we got information on it but I'm not going to give it to you until you pay it, is that -- is that a violation?

ATTORNEY WALLACE SOLBERG: I think so. And getting back to what counsel said on Exhibit D, what they did is they had a lawyer for the defense pump in one of the plaintiff's name, both of them actually. And when you get to Exhibit D and it says, *save results.* To see your results, we need this basic information, and they required this person to put her e-mail address there. So they're holding out plaintiff's identity. They've already done it.

And we've alleged and it's undisputed in this motion they're both -- both of the plaintiffs are in the database. And the whole point, your Honor, and you're talking about is it a dollar or not, what we would respectfully submit is the question, are they holding out plaintiffs' identities?

THE COURT: Yes.

ATTORNEY WALLACE SOLBERG: All right, they are. And also whether you pay a buck or not, the trial -- and this is what distinguishes all those cases. You're distinguishing between free or an amount of money. What I would suggest the question is is are they being held out during a trial period? What's the purpose of the trial period? They want to -- they want to sell monthly subscriptions.

And you had mentioned Gaul. Let me get to that real quick. And I'm just going to read -- just the last portion of Gaul, and this is at page -- or asterisk seven, *plaintiffs have similarly pled that anyone entering her name in a defendant's database would be solicited to purchase a subscription service to obtain additional information on plaintiffs and others. Plaintiff has successfully pled that individuals searching her name could not obtain a detailed report of her identity without subscribing to defendant's full database services even if only for a one dollar free trial* -- which is a contradiction in terms, but that's what the judge said -- *which would after seven days revert to monthly billing. As a result, her identity was used*

*for a commercial purpose to promote the service and not merely to offer a more detailed report of plaintiff.*

That's exactly what this case is, exactly what this case is. They go into the marketplace on the internet and they say -- you know, you enter a name, if you want to see -- if you want to see the results of your search, you sign up for a trial, a one week -- I'm sorry, a seven-day, one dollar trial. And we go back and forth in the briefing and they want to call --

THE COURT: Let me stop you.

ATTORNEY WALLACE SOLBERG: Okay.

THE COURT: Plaintiff explains that when visitors to the inmate search -- searcher site enters an individual's first and last name, they are shown a, quote unquote, *free preview of all individuals in the database with the same name. This preview includes uniquely identifying information, including age, city and state of residence and the names of family members.*

That's what makes it a violation. This doesn't. This just says, we have information but we're not giving you age, date, names of family

members or any of that until you pay for it. That's a huge distinction.

ATTORNEY WALLACE SOLBERG: It's still -- it's still a one dollar, one-week trial. And, again, I come back to what's the purpose of that, what is the purpose of their one-week trial? They want to market -- they want to market --

THE COURT: A hundred percent.

ATTORNEY WALLACE SOLBERG: -- people's identities and that's -- I would respectfully submit that's game set and match. That's what they're doing.

Whether they -- so according to them, ERPA is a dead letter if they go you got to pay a dollar for your free trial, and we disagree with that. And on a 2-619, they've conceded the sufficiency of our complaint; they've conceded our allegations. And I think we're entitled to the inference from Exhibit D, *save results* if -- to see your results we need this basic information.

So unless Peoplesmart is fooling the seacher the way -- you know, we want you to pay a buck to see your results but there really are no results, and I'm sure that's not the case, they've

marketed it. Short and simple.

And the flip side of that, Judge, is I have -- and we've been through these cases quite a bit, too. And what I've also haven't seen is the -- a court going, you have to allege it's free or you cannot state a claim. That language is found nowhere in the statute. It's essentially that's grasping onto the statute a pleading requirement that does not exist in the language of the statute.

THE COURT: Well, it's implied because if you paid for it, it's legal because you're selling publicly available information, so it's not a violation because you can do that. Even if it's for marketing purposes, it's unfair and -- and I don't agree with it. And that's why I spent, I'm going to say, between 40 and 50 hours.

And I found one case in California. I thought that some court would say this is nonsense, spending -- charging 99 cents as opposed to doing it free is a distinction without a difference. Couldn't find a single decision to support it.

In fact, to the contrary, I found a case in California that I'll cite to you, and then I'll let both of you continue to argue. This is obviously not

binding or persuasive. This is a United States District Court out of the Northern District of California, Mannacio, M-a-n-n-a-c-i-o versus Information.com LLC. Just give me a minute and let me go through this with you.

*The defendant owns and operates a website that is a self-described people search engine. Defendant provides a variety of free search tools with which prospective subscribers may search for and locate an individual in whom they are interested. When a visitor searches for an individual, defendant publishes a teaser profile that includes information sufficient to uniquely identify the search for the individual. If a user wants to go beyond the teaser profile to obtain additional information, they must pay to do so. The plaintiff alleged that defendant knowingly used that teaser profile to advertise and solicit subscriptions. The teaser profile included the plaintiff's first and last name, his city and state of residence and a proposed limited time offer of a special five-day trial pass for 99 cents that would permit the user to unlock unlimited additional reports.*

The court said *the plain meaning of the*

*term use was to make use of, to convert, to warrant service, to avail ones self of to employ.* And they're quoting Black's Law Dictionary.

Using that definition, the Court reasoned that whether or not the defendant succeeded in its efforts, the image was used for the purpose of increasing defendant's sales requiring third-party viewership would not serve their -- their statutes, purpose of remedying the harm to the plaintiff's peace of mind, the loss of agency and control over her image, not only the visual display causes harm. That's the holding out thing that you mentioned earlier.

*The court found that plaintiff alleged that his name and identifying information were accessible on defendant's website and alleged his teaser profile offer to trial subscription that gave users access to all of defendant's website, not just to his own information.*

And that was sufficient to state a claim under that statute.

So in other words, that information that was provided for a 99 cent free trial period was a violation, for a 99 cent trial period. That's what

they found.

So if using someone's information for a 99 cent trial period is a violation, then it would -- the reverse would seem to be true. If the website requires you to purchase a 99 cent subscription before you can access the information, it would seem, if that's sufficient to be a violation of the act, it should be equally sufficient to justify it not being a violation if you pay the 99 cents before you're allowed access to the information.

And I can't find any single case in the entire country that there's a violation when you have to pay anything, anything, a nickel, a penny, 99 cents because once you pay, that website is entitled to sell your -- sell your information publicly available, they can sell it. Once you pay, that's apparently legal. I don't get it.

ATTORNEY WALLACE SOLBERG: Two things, your Honor.

THE COURT: Yes.

ATTORNEY WALLACE SOLBERG: And I'm glancing at a case so I'm not going to vouch for all the facts here. But the case, to answer your question, I'm looking at Camacho (phonetic) versus Peopleconnect.

And what I'm reading here -- and I'll have to -- the facts will have to be flushed out a little more, I won't pretend otherwise, but I'm reading at page -- where am I reading? It's hard to find the page here for some reason.

THE COURT: Is it an Illinois case?

ATTORNEY WALLACE SOLBERG: No, it's a California case.

ATTORNEY PATRICK SOLBERG: A California case.

THE COURT: California.

ATTORNEY WALLACE SOLBERG: Well, I'll just read it. Quote, *the U.S. search website displays a checkout page with an offer to purchase subscriptions, a five-day trial costing 199, a monthly subscription.*

You know what, your Honor, let me say this, it comes down to this: If there's a -- if you're going to -- if it's a requirement that everything be free, well, this isn't, but the problem -- the other thing for purposes of this -- this motion, *save results* -- again, I'm back on Exhibit D of the affidavit -- *save results, to see your results, we need this basic information*, that is a teaser.

The fact that -- you know you're talking

about -- you know you're talking about Dawkins, that's who you plugged in. So either they're -- they're misleading you by suggesting that there are results here but you got to -- you got to sign up to see it --

THE COURT: You have to pay for it.

ATTORNEY WALLACE SOLBERG: Yeah, it's a free trial. That's -- the point, your Honor, and I think -- this is where we respectfully --

THE COURT: It's not a free trial, it's a -- it's a dollar or it's five bucks.

ATTORNEY WALLACE SOLBERG: This is -- this is where we respectfully kind of --

THE COURT: Hey, I agree with you.

ATTORNEY WALLACE SOLBERG: The fact that there's not a case that somebody is charged a dollar for it does not mean that that -- that the defendant is not violating the statute. They are. They're using -- holding out. All *holding out* means under Illinois law is that the plaintiffs' identities are in their database and I would --

THE COURT: Right.

ATTORNEY WALLACE SOLBERG: -- suggest that's undisputed. So they come -- again, I'm sorry if I'm

getting repetitive but they're -- they're absolutely marketing, they're saying -- what's the -- if that's correct, what's the difference between a trial and a subscription? What is -- what is the purpose of a trial?

Once you conclude, and I don't think there's any other conclusion, that the purpose of a trial is to sell monthly subscriptions, that is a commercial purpose without a doubt.

THE COURT: Well, let me ask you this: They give them -- instead of a 99 cent one week or five day, let's say you get -- your first six months is 30 bucks a month and if you want to keep going, it's 100 bucks a month. Same deal. They're still trying to sell you on long-term. It's just a shorter period of time.

ATTORNEY WALLACE SOLBERG: Exactly and that's -- that's revealing. They --

THE COURT: The object is still to sell subscriptions; it's still marketing.

ATTORNEY WALLACE SOLBERG: Yes, I agree. And I would suggest it's still a violation but that's -- that's not what we have here. We have seven days and how do you know they're marketing? Well, like a lot

of outfits --

THE COURT: They are. They're 100 percent marketing. There's no dispute; that's obvious. They're trying to sell subscriptions, 100 percent.

ATTORNEY WALLACE SOLBERG: Okay.

THE COURT: Here, this is a teaser, we'll get you in here, if you like it, we're trying to get you to buy our subscriptions. 100 percent, that's the purpose. Nobody could possibly in good faith disagree with that or argue against that. That's exactly what they're doing. They're using your client's personal information and everybody else's that are being held out, they're using that information to market subscriptions. They are absolutely 100 percent doing that. Nobody could possibly argue differently. That's what they're doing. They're just not doing it for free, they're doing it for a nominal amount to skate ERPA.

ATTORNEY WALLACE SOLBERG: Yeah, and we would respectfully suggest the attempt should be rejected.

THE COURT: I agree.

ATTORNEY WALLACE SOLBERG: At the end of the day they're -- okay.

THE COURT: Every single case -- so some smart

lawyers or some smart people that are aware of all these cases around the country, and there are dozens upon dozens of them in Illinois all involving these free trials, someone apparently, cleverly so, decided, okay, we'll charge them a buck. Now it's not a free trial. Now we're not disclosing any personal information for free, we are charging them, and we're allowed to charge for publicly-available information; we can do that. It's not -- they can do that, right? We can charge a subscription and allow you to access personal information that otherwise we couldn't do for free. If we charge you, we can do that. That's allowed. That's permissible, correct?

ATTORNEY WALLACE SOLBERG: Correct.

THE COURT: That's what somebody is trying to do. You can -- you don't have to remain silent.

ATTORNEY PATRICK SOLBERG: What's not allowed, though, is the advertisement.

THE COURT: Now you need to identify yourself for the record.

ATTORNEY PATRICK SOLBERG: I'm sorry, Patrick Solberg.

THE COURT: Okay.

ATTORNEY PATRICK SOLBERG: What's not allowed is

the advertising, and the key difference here is you're paying a buck to be advertised to.

THE COURT: I know.

ATTORNEY PATRICK SOLBERG: But nothing in the statute says it has to be shown for free. There's nothing in ERPA that says it has to be free. If you read what they said with -- under free and commercial purpose, it means the public use are holding out, go to Section 2, for purposes of advertising or promoting products. It doesn't say *free*.

So the fact that they're -- they're still advertising, they're still using the name to advertise.

THE COURT: Sure, I agree.

ATTORNEY PATRICK SOLBERG: And there's no -- there's no -- and on the flip side of that, there's no case that's held otherwise that say you pay a buck, you're out the door, you don't have relief under ERPA. There's no case that says that either or any of the Right of Publicity statutes.

ATTORNEY WALLACE SOLBERG: The distinction --

THE COURT: Your name.

ATTORNEY WALLACE SOLBERG: Wallace Solberg, your Honor.

THE COURT: All right.

ATTORNEY WALLACE SOLBERG: Number four out of six.

The distinction you're drawing is a subscription versus a trial. Can they sell -- can they sell information about people in a subscription for profit; absolutely. What can't they do; they can't in a trial, whether for a dollar or free, they can't hold out those same two people for commercial purposes. The commercial purposes being advertising. So their subscription, when you're buying information pursuant to a subscription, I don't think people -- I wouldn't say that's advertising, that's selling information for profit. But here, when you're on a trial and when that trial -- when that one dollar trial expires in seven days and you're automatically enrolled into a monthly subscription, unless you say no, I want out within seven days, I would suggest that is -- that is the difference between the two, and it's dispositive. It cannot be said -- and I heard you say it a few times, too, they're advertising.

THE COURT: Yep.

ATTORNEY WALLACE SOLBERG: And the fact that

they charge a nominal fee to try to escape ERPA, we don't think that should be successful.

THE COURT: I agree with you. And there's such thing as a free trial period, and there's such thing as a trial period, and there's such thing as a trial subscription. And whether that prescription is for a month -- subscription is for a month, five days or for seven days, if the user enters into an agreement for a sum certain, whether it's a dollar or otherwise, they enter an agreement for a sum certain for a certain duration of time, that's a subscription; that's an agreement; it's a legally binding agreement.

This is clearly marketing, it is clearly an attempt to get around ERPA and around -- and around the entire purpose of ERPA. And that's why I spent so much time on it because I understand and fully realize what's going on here, and it shouldn't be allowed because what is the difference if you pay a buck or five bucks or 99 cents, you're still using your client's and everybody else's private information to sell subscriptions and make money at their expense.

There's nothing I would like more than to

say no, this completely undermines ERPA. That's what I would like to do. Anything -- just for the record, because obviously we're going to need it. Make sure you state your name.

Off the record for a second.

(Discussion held off the record.)

THE COURT: Back on the record.

Guys, please feel free to make your record, but identify yourselves for the court reporter because this is all being recorded.

ATTORNEY TALOTTA: Thank you. Jon Talotta on behalf of defendants. Your Honor, unless you have questions from -- from -- for us in terms of why the motion should -- should be denied, I don't have anything to add.

THE COURT: Does anybody feel it's necessary to address your other -- your other issues that -- that I wasn't -- I wasn't buying any of the -- let's see, yes, the separate product, that's -- that's -- I think both sides have realized that whether it's Lukis, L-u-k-i-s, or otherwise, it doesn't have to be a separate product. And I think as demonstrated in the reply brief, that is a nonissue. I think everybody agrees that it doesn't have to be a

separate product.

Your exemption argument, the two exemptions, I find those exemptions inapplicable. The standing, they have it, both statutorily and, in my opinion, common-law.

ATTORNEY TALOTTA: Your Honor --

THE COURT: Yes.

ATTORNEY TALOTTA: -- on that issue, the --

THE COURT: Which issue?

ATTORNEY TALOTTA: The standing issue just for clarification.

THE COURT: Yes, please.

ATTORNEY TALOTTA: We -- we did not address this head on in the -- in our briefing but Section 60 of the statute states that the common-law rights for a right of publicity are supplanted by the statute, so as we read the statute, I don't think there is a common-law claim for right of publicity so they've only pled one claim so I don't think they have standing if they don't have statutory standing. I think that's probably on the statute orders.

THE COURT: What is your argument -- and plaintiff's counsel, your name?

ATTORNEY TALOTTA: Jon Talotta.

THE COURT: Okay. What is your argument that they don't have statutory standing because they clearly do.

ATTORNEY TALOTTA: I was just -- that's why I said point of clarification, on the common-law piece, we don't think that they have statutory standing because they haven't been able to plead a claim, but even -- even if they -- if they're trying to survive a motion to dismiss by claiming they also have common-law standing, we would suggest that the statute says otherwise.

THE COURT: Okay. Do you have an argument against statutory standing?

ATTORNEY TALOTTA: All the arguments that we made in terms of the applicability of the statute to the -- to the allegations in the case.

THE COURT: Okay. And I guess what this comes down to is the Court -- did you guys want to -- on the plaintiff's side, just identify yourself.

ATTORNEY WALLACE SOLBERG: Wallace Solberg. And I'll make this short and sweet, Judge. You've already made the record, but just I'll be succinct one more time.

Plaintiffs have alleged that Lifetime,

through Peoplesmart, holds out plaintiffs' identities without written consent in its one-week trial to advertise and convince prospective customers to enroll in and ultimately purchase monthly subscriptions for Peoplesmart.

Plaintiff suggests that that states a claim particularly in the face of a 2-619(a)9 and 2-615 motion to dismiss.

THE COURT: All right. Thanks guys.

ATTORNEY WALLACE SOLBERG: Thank you, your Honor.

THE COURT: You know, I don't want to sound like a broken record and keep repeating myself. Sometimes sitting up here is not fun. Sometimes the Court has to make rulings that it doesn't like. And my intent when I read -- when I read the briefs, my intent was -- honestly, my intent was to find that simply charging a nominal amount in an obvious attempt to get around ERPA is insufficient to get around ERPA and the purpose behind ERPA to protect people from companies using personal information for profit and to sell subscriptions. While I understand that companies can still do that and use people's information for profit, I understand that, but it's

publicly available information. But ERPA, the purpose behind it is you shouldn't be able to use people's personal information to sell stuff, to sell subscriptions, to sell whatever it is that you're selling, whether it's for free or whether it's charging a buck or five bucks in this case, depending upon which plan you pick for your trial period or trial subscriptions, whatever you want to call it. What's the difference whether it's free or a buck or five bucks, it's -- it's irrelevant and it's a distinction without a difference. That's what my initial thought was. And I look for cases that would point me in that direction, and I found none. Every single case I found across the country involved the disclosure of personal information prior to the user seeking that information, prior to that user paying for it, paying any amount of money for it regardless of what that amount was. And it appears that most states in this country have this type of law protecting their citizens from this type of activity, and I couldn't find a single case that was a violation that didn't involve a free trial period when the personal information was -- was released. This isn't that. And the operative paragraphs in the

complaint as I read into the record earlier was 20, 21 and 22. And that even says that those paragraph says that you have to pay for it before any personal information is released.

As counsel for the defendant pointed out, Paragraph 28 does come into play because it does say that if you punch in somebody's name, that the user is advised that information pertaining to that person is available, but you have to pay for it. No personal information is revealed.

I understand plaintiffs' counsel's argument that that in and of itself, perhaps, is an ERPA violation. I disagree, I don't think it is. I think that the personal information must be released or revealed before an ERPA violation takes place. So based upon the allegations contained in the complaint, it's not an ERPA violation in my opinion. It should be, but it isn't. So on its face, it's a 615, it doesn't -- plainly it doesn't state, in my opinion; plainly does not state a cause of action.

Now, with respect to the 619 aspect of it, if you admit as a defendant all well-pleaded facts, it still doesn't state a cause of action, but there's no affirmative matter really being set forth to

defeat the claims because no claims need to be defeated because it doesn't state a cause of action.

So the motion is granted. I don't know that it can be fixed. For the record, your name.

ATTORNEY WALLACE SOLBERG: Wallace Solberg. Along those lines, your Honor, I'm sure it wouldn't surprise your Honor that we're going to engage in a furious search to find the case you're looking for, and if we find it, I would expect we would be asking to reconsider your ruling here. I don't want to surprise the Court with that. I'm sure it's not a surprise.

THE COURT: No, it's not.

ATTORNEY TALOTTA: Your Honor, if I can be heard.

THE COURT: Yes.

ATTORNEY TALOTTA: On the --

THE COURT: Your name.

ATTORNEY TALOTTA: Jon Talotta on behalf of the defendant. If we would submit that this isn't the type of complaint in -- given your Honor's ruling that is subject to amendment, so we would ask that the complaint be dismissed with prejudice.

THE COURT: I certainly -- certainly subject to

a motion to reconsider. I'm just -- my hesitation is while it's clearly a 615 dismissal, I'm trying to think of it would also be a 619.

ATTORNEY TALOTTA: Even if your Honor doesn't accept the -- the information that we submitted as affirmative evidence that would be as part of that 619 motion, you still found just a moment ago that under 619, even accepting all the allegations as true, the complaint still fails. So we would submit that there isn't anything that they can allege new in this instance that would -- would give them the ability to resurrect the claim.

THE COURT: No, I agree with you. I'm just trying to make a record as to whether it would be a 615 or 619. Certainly 615, that's for sure, that aspect is granted. I'm just trying to, in my mind, articulate a basis for a 619 basis as well.

615 doesn't state a cause of action, so it would be dismissed with prejudice. Certainly I would -- with all due respect to defense counsel, I would love to reconsider if there was a -- if there's a case out there that says that these nominal fees are insufficient to avoid an ERPA claim, it doesn't have to be Illinois, anywhere, I don't think you're

going to find it. I looked. But that doesn't mean necessarily that you won't. Are you looking to replead?

ATTORNEY WALLACE SOLBERG: No. The Court has been clear. And, again, we obviously respectfully disagree with the nominal fee, but we'll look for that, we'll look for the case, and if not, I would expect we would, you know --

THE COURT: Okay.

ATTORNEY WALLACE SOLBERG: -- try to be heard.

THE COURT: So you're not -- you're not asking to replead, right?

ATTORNEY WALLACE SOLBERG: Not right now.

THE COURT: Okay.

ATTORNEY WALLACE SOLBERG: You know, I would like to reserve on that. I don't think so, your Honor but --

THE COURT: Okay.

ATTORNEY WALLACE SOLBERG: -- I don't want to do a spur of the moment thing.

THE COURT: Just bring -- if you -- if you find a case that would say that it's a commercial purpose, which I found it wasn't, if you find a case that says a nominal fee still makes it a commercial -- using it

for a commercial purpose, I would love -- I would love to see that.

So case dismissed. Do you want to do a handwritten order, guys?

All right, so I'm going to start with the plaintiffs. Can you all just, so the record is clear, starting with you, sir, state your first and last name, spell both for the record.

ATTORNEY PATRICK SOLBERG: Patrick Solberg for plaintiffs; P-a-t-r-i-c-k, S-o-l-b-e-r-g.

THE COURT: Counsel.

ATTORNEY WALLACE SOLBERG: Wallace Solberg for the plaintiff; W-a-l-l-a-c-e, S-o-l-b-e-r-g.

THE COURT: And for the defense.

ATTORNEY TALOTTA: Thank you, your Honor. Jon Talotta for the defendant. First name is Jon, J-o-n, last name Talotta, T like in Tom, a-l-o-t-t-a.

THE COURT: Counsel.

ATTORNEY PATRICK SOLBERG: And Brendan Healey for the defendant. First name Brendan, B-r-e-n-d-a-n, last name Healey, H-e-a-l-e-y.

THE COURT: Okay. Thank you. And with that, we're off the record.

ATTORNEY TALOTTA: Thank you, your Honor.

ATTORNEY PATRICK SOLBERG: Do you want us to draw up an order, your Honor, are you going to issue a written order or reasons stated on the record.

THE COURT: You know what, I'm just going to -- I'll prepare the order. Just that it be very, very simple, motion to dismiss is granted for reasons stated on the record.

ATTORNEY WALLACE SOLBERG: Pursuant to -- motion granted pursuant to 615 or 619, your Honor?

THE COURT: I think it's going to be 615.

ATTORNEY WALLACE SOLBERG: Just 615, okay.

THE COURT: I think so.

ATTORNEY WALLACE SOLBERG: Thank you, your Honor.

THE COURT: I don't think it's a 619.

ATTORNEY TALOTTA: Well, I'm not sure -- if it's a 615, it should be a 619. Whether you accept the affirmative evidence that's provided or not still -- there's still no claim that's stated.

THE COURT: What's the affirmative evidence?

ATTORNEY TALOTTA: No, I'm saying even if you don't accept what we were trying to show in terms of the there's no -- there's no identity being provided. Even if the judge doesn't -- even if your Honor

doesn't accept that, the basis -- the basis for the 615 dismissal is the same for 619. There's no -- there's no claim pled.

THE COURT: It has to be an affirmative matter that defeats the claim and I don't -- I can't think of what it is other than -- I can't think of anything. I think it's 615. Let me -- yes, I'll get that order entered today.

ATTORNEY WALLACE SOLBERG: Thank you, your Honor.

THE COURT: Don't blow the deadline. 30 days.

ATTORNEY HEALEY: Thank you.

THE COURT: I just say that because somebody did that, what, last week, 31 days.

ATTORNEY WALLACE SOLBERG: And if a motion gets filed motion, motion to reconsider, I'll have to talk to the appellate boys about that but I assume that would --

THE COURT: As long as it's filed in 30 days.

ATTORNEY WALLACE SOLBERG: Okay.

THE COURT: All right, gentlemen, have a good rest of your day. Okay.

ATTORNEY TALOTTA: Thank you, your Honor.

THE COURT: You can just jump on electronically

and get a copy of that. Okay.

ATTORNEY WALLACE SOLBERG: Thank you, your Honor.

ATTORNEY TALOTTA: Thank you, your Honor.

(End of proceedings.)

IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
DUPAGE COUNTY, ILLINOIS

I, LIDIA T. STEFANI, an Official Court Reporter for the Eighteenth Judicial Circuit of Illinois, do hereby certify that the foregoing Report of Proceedings was electronically recorded and is a true, correct, and complete transcript so taken at the time and place hereinabove set forth to the best of my ability based on the quality of the electronic recording.

LIDIA T. STEFANI
Official Court Reporter